**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
(Eastern Division)**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **Judge Pamela Hollis** |
| **BACHRACH CLOTHING, INC., Debtor** | § | **Case No. 06- 06525** |
| | § | **(Chapter 11)** |

**AMENDED FINAL AGREED STIPULATION AND ORDER AUTHORIZING LIMITED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION**

**THIS MATTER** was heard on the *Motion For Use of Cash Collateral Pursuant to 11 U.S.C. §363* (the "Motion") filed by Bachrach Clothing, Inc., the debtor and debtor in possession (the "Debtor" or "Bachrach"), seeking, *inter alia*, pursuant to Sections 105, 361, 362(a) and 363(c), of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authority for the Debtor to use Cash Collateral (as defined herein) of LaSalle Retail Finance, a Division of LaSalle Business Credit, LLC ("LaSalle") and Sun Bachrach, LLC ("Sun Bachrach", together with LaSalle, the "Prepetition Lenders"); due and adequate notice of the Motion given to all parties entitled thereto; the Court having conducted a hearing on June 7, 2006 (the "Hearing"); the Court having entered Interim Agreed Stipulations and Orders Authorizing Limited Use of Cash Collateral and Granting Adequate Protection on June 7, 2006 (the "First Interim Order") and June 30, 2006 (the "Second Interim Order" and, together with the First Interim Order, the "Interim Orders"); the Court having entered a Final Agreed Stipulation and Order Authorizing Limited Use of Cash Collateral and Granting Adequate Protection (the "Original Final Order"), the Court having considered evidence presented at the Hearing, the

representations of counsel for the Debtor and for the Prepetition Lenders and the parties stipulations and agreements as set forth below, and all objections to the entry of this order having been either withdrawn or overruled.

The Debtor and the Prepetition Lenders have represented to the Court that they have agreed in good faith to the terms and conditions of this Amended Final Agreed Stipulation and Order Authorizing Limited Use of Cash Collateral and Granting Adequate Protection (the "Amended Final Cash Collateral Order").

**THE PARTIES HEREBY STIPULATE:**

## FACTUAL AND PROCEDURAL BACKGROUND

A. On June 6, 2006 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code and thereby commenced the above-captioned case (the "Case"). The Debtor has continued in the management and possession of its businesses and properties as Debtor in Possession pursuant to Bankruptcy Code §§ 1107 and 1108.

B. On June 12, 2006, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in this Case.

### The LaSalle Claims

C. Pursuant to (i) that certain Loan and Security Agreement dated March 29, 2005 (the "Prepetition Credit Agreement") by and between the Debtor and LaSalle, as amended and in effect immediately prior to the commencement of this Case, LaSalle established in favor of the Debtor a revolving credit facility in the maximum amount of $20,000,000.00, in addition to other financial accommodations established in the Prepetition Credit Agreement. (The Prepetition Credit Agreement and all security

agreements, assignments, pledges, mortgages, guaranties, and other instruments or documents executed in connection therewith or related thereto, and defined as the "Loan Documents" in the Prepetition Credit Agreement, shall be referred to herein as the "LaSalle Prepetition Claim Documents"). True and correct copies of certain of the LaSalle Prepetition Claim Documents are retained by LaSalle and the Debtor and will be available to interested parties upon request.

D.      Under the LaSalle Prepetition Claim Documents and applicable law, LaSalle claims that it holds valid, enforceable, and allowable claims against the Debtor, as of the Petition Date, in an aggregate amount equal to approximately $5 million in unpaid principal plus accrued but unpaid interest, plus any and all fees and costs, and any and all other debts or obligations of the Debtor to LaSalle under the LaSalle Prepetition Claim Documents (including all "Liabilities", as defined in the Prepetition Claim Documents), or otherwise (collectively, the "LaSalle Prepetition Claim").

**The Sun Bachrach Claims**

E.      On July 12, 2005, Harris N.A., a national banking association ("Harris"), made a $2 million loan to Bachrach (the "Harris Loan"), pursuant to a Harris Loan Authorization Agreement dated as of July 12, 2005 (as amended, modified, supplemented or restated (the "Harris Loan Agreement", and together with any all security agreements, assignments, pledges, mortgages, guaranties, and other instruments or documents executed in connection therewith or related thereto, the "Harris Prepetition Claim Documents", and together with the LaSalle Prepetition Claim Documents, the "Prepetition Claim Documents"). On December 29, 2005, the Harris Prepetition Claim Documents were amended, and Harris assigned all of its rights and

interests in, to and under the Harris Prepetition Claim Documents to Sun Bachrach. On or about March 3, 2006, Sun Bachrach made an additional $3 million advance to Bachrach pursuant to that certain Amendment to Loan Agreement dated as of March 3, 2006 between Sun Bachrach and Bachrach. True and correct copies of certain of the Harris Prepetition Claim Documents are retained by Sun Bachrach and the Debtor and will be available to interested parties upon request.

F.     Under the Harris Prepetition Claim Documents and applicable law, Sun Bachrach claims that it holds valid, enforceable and allowable claims against the Debtor, as of the Petition Date, in an aggregate amount equal to at least $5.0 million in unpaid principal, plus accrued but unpaid interest, plus any and all fees and costs, and any and all other debts or obligations of the Debtor to Sun Bachrach under the Harris Prepetition Claim Documents (collectively, the "Sun Bachrach Prepetition Claim").

**The Prepetition Collateral**

G.     Each component of the LaSalle Prepetition Claim evidenced by the LaSalle Prepetition Claim Documents is secured by valid, perfected, and unavoidable first priority liens and security interests in substantially all of the personal and real property of the Debtor including, without limitation, the following and all proceeds thereof, substitutions therefore, and accessions thereto, as further provided in the LaSalle Prepetition Claim Documents (the "Prepetition Collateral"):

(1)     All Accounts and accounts receivable.

(2)     All Inventory.

(3)     All General Intangibles.

(4)     All Equipment.

(5)    All Goods.

(6)    All Chattel Paper.

(7)    All Letter-of-Credit Rights.

(8)    All Payment Intangibles.

(9)    All Supporting Obligations.

(10)   All books, records, and information relating to the Collateral and/or to the operation of the Borrower's business, and all rights of access to such books, records, and information, and all property in which such books, records, and information are stored, recorded, and maintained.

(11)   All Leasehold Interests.[1]

(12)   All Investment Property, Instruments, Documents, Deposit Accounts, money, policies and certificates of insurance, deposits, impressed accounts, compensating balances, cash, or other property.

(13)   All insurance proceeds, refunds, and premium rebates, including, without limitation, proceeds of fire and credit insurance, whether any of such proceeds, refunds, and premium rebates arise out of any of the foregoing. ((a) through (l)) or otherwise.

(14)   All liens, guaranties, rights, remedies, and privileges pertaining to any of the foregoing ((a) through (m)), including the right of stoppage in transit.

The Prepetition Collateral is more fully described, and the foregoing capitalized terms are defined, in the LaSalle Prepetition Claim Documents. LaSalle's liens and security interests in the Prepetition Collateral were granted pursuant to the LaSalle Prepetition Claim Documents.

H.    LaSalle has properly perfected its first priority liens and security interests and other liens in the Prepetition Collateral as evidenced by the LaSalle Prepetition

---

[1]  Notwithstanding that the definition of "Collateral" in the LaSalle Prepetition Claim Documents includes leasehold interests, LaSalle does not assert that it holds a perfected security interest in the Debtor's leasehold interests and, therefore, such leasehold interests are not included in the definition of Prepetition Collateral for purposes of this Cash Collateral Order.

Claim Documents, by documents held in possession of LaSalle, and documents filed with the appropriate state and/or other offices.

I. The LaSalle Prepetition Claim Documents are genuine, valid, existing, and legally enforceable.

J. From and after the Petition Date, LaSalle holds enforceable, perfected liens and security interests in the Prepetition Collateral and Cash Collateral (as defined herein), plus any and all other property of this estate, real and personal, as provided under Bankruptcy Code § 552(b), this Amended Final Cash Collateral Order, and applicable law in the amount of the LaSalle Prepetition Claim, plus, without limitation, any other amounts, including without limitation interest, and reasonable fess, costs, and charges allowable under the Bankruptcy Code and applicable law (the "LaSalle Interests"), and, subject to the rights of other parties in interest to challenge in compliance with Paragraphs 61-63 of this Amended Final Cash Collateral Order, the LaSalle Prepetition Claim constitutes an allowed, fully secured claim under the Bankruptcy Code, including, without limitation, within the meaning of § 506 of the Bankruptcy Code to the extent of the value of the Prepetition Collateral and Cash Collateral as of the Petition Date.[2]

K. Each component of the Harris Prepetition Claim evidenced by the Harris Prepetition Claim Documents, other than the sum of $1.5 million in principal, plus accrued interest, arising under that certain Demand Note issued by the Debtor to Sun Bachrach, is secured by valid, perfected and unavoidable liens and security interests in

[2] Subject to the provisions of the Original Final Order and the Amended Cash Collateral Order, on or about July 10, 2006, the Debtor paid the LaSalle Prepetition Claim, subject to certain reserves and holdback amounts.

substantially all of the Prepetition Collateral, excluding very limited assets (including certain equipment that is subject to purchase money security interests) of the Debtor, as set forth in the Harris Prepetition Claim Documents. Sun Bachrach's liens and security interests in the Prepetition Collateral were granted pursuant to the Harris Prepetition Claim Documents.

L. Harris, and consequently Sun Bachrach, has properly perfected its liens and security interests and other liens in the Prepetition Collateral as evidenced by the Harris Prepetition Claim Documents, by documents filed with the appropriate state and/or other offices.

M. The Harris Prepetition Claim Documents are genuine, valid, existing and legally enforceable.

N. From and after the Petition Date, Sun Bachrach holds enforceable, perfected liens and security interests in the Prepetition Collateral and Cash Collateral, plus any and all other property of the estate, real and personal, as provided under Bankruptcy Code section 552(b), this Amended Final Cash Collateral Order, and applicable law in the principal amount of $5.0 million, plus, without limitation, any other amounts, including without limitation, interest, and reasonable fees, costs, and charges allowable under the Bankruptcy Code and applicable law (the "Sun Bachrach Interests", and together with the LaSalle Interests, the "Prepetition Lenders' Interests"), and, subject to the rights of other parties in interest to challenge in compliance with Paragraphs 61-63 of this Amended Final Cash Collateral Order, constitutes an allowed fully secured claim under the Bankruptcy Code, including, without limitation, within the meaning of section 506 of the Bankruptcy Code, to the extent of the value of the

Prepetition Collateral and Cash Collateral, (after taking into account the LaSalle Prepetition Claim) as of the Petition Date.

O. Notwithstanding anything in the preceding Paragraphs C through N to the contrary, the Sun Bachrach Prepetition Claims and the Sun Bachrach Interests are subject to that certain Subordination Agreement among the Debtor, LaSalle (as Agent), Harris and Bachrach Clothing Holding Corp.

**Budget**

P. The Debtor warrants and represents that the Budget (as defined herein) includes all reasonable and necessary expenses reasonably foreseeable to be incurred in connection with this Case for the period set forth in the Budget (as defined herein).

Q. Except (i) as may be provided in the Budget (as defined herein), including, without limitation, for ordinary course payroll, benefits, expense reimbursements, and fee applications approved by the Court, and (ii) with respect to the executive sales incentive plan previously approved by the Court (the "Incentive Plan"), the Debtor agrees that no transfer of Cash Collateral shall be made to any of the Debtor's insiders, as that term is defined in Bankruptcy Code § 101.

**Disposition of Assets**

R. The Debtor, in its business judgment, decided to commence immediately the process of conducting a sale of all of the Debtor's business and/ or assets (the "363 Sale"), either as a going concern sale (the "Going Concern Sale") or as a chain-wide going out of business liquidation sale (the "GOB Sale"). In this regard, the Debtor identified and contacted prospective purchasers to consummate a Going Concern Sale, delivered so-called "bid packages" to numerous nationally recognized professional retail

inventory liquidators and received proposals from several such liquidators. The Debtor, pursuant to Court order, retained Alliance Management, Inc. ("Alliance") as the Debtor's consultant with responsibility for managing the 363 Sale process and, in conjunction with Alliance and consultation with the Prepetition Lenders and the Committee, selected one of the bids as a so-called "stalking horse bid." Further, the Debtor filed appropriate motions (the "Sale Motions") with this Court seeking to establish bidding procedures (which bid procedures were approved), approving the stalking horse bid, and granting the Debtor authority to conduct the 363 Sale. The Debtor agreed, pursuant to the First Interim Order, to: (i) diligently prosecute the Sale Motions; and (ii) on or before the Expiration Date (as defined below), use its best efforts to obtain the entry of one or more orders from the Court granting any pending Sale Motions (which Sale Motion was granted) and thereafter immediately proceed to closing on the sale of the Debtor's business as a Going Concern Sale or commence the chain-wide store liquidation sale, or some combination thereof, as applicable

S. Sun Bachrach has agreed to permit the Debtor to pay landlords "stub" rent for the June 2006 postpetition period, only in such event that Sun Bachrach receives the Initial Sun Bachrach Payment referred to in Paragraph 22 hereof, to such landlords whose leases are assumed and assigned or otherwise agree in writing to prorate rent to the date the Debtor delivers vacant possession of applicable leased premises (and agree to waive lease obligations for the remainder of such month).

**THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:**

1. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled and all reservations of rights included therein are overruled on the merits.

4. Notice of the Motion and the Hearing with respect thereto has been given by electronic mail, telecopier, or overnight delivery pursuant to Bankruptcy Rules 2002, 4001(c) and 9006, and as required by Bankruptcy Code §§ 102, 361, 362 and 363. Additionally, notice of the Hearing was given in open court on July 6 and 13, 2006. Other than the notice provided for herein, no further notice of, or hearing on, the relief sought in the Motion is necessary or required.

**CASH COLLATERAL**

5. To the extent of the Prepetition Lenders' Interests, as evidenced by the Prepetition Claim Documents and as permitted by this Amended Final Cash Collateral Order and the Bankruptcy Code, all (a) cash of this estate, wherever located; and (b) cash equivalents, whether in the form of negotiable instruments, documents of title, securities, deposit accounts, or in any other form, which represent income, proceeds, products, rents or profits of the Prepetition Collateral that are now in the possession, custody or control of the Debtor (or of persons in privity with the Debtor), or in which the Debtor will obtain an interest during the pendency of this Case, which represent income, proceeds, products, rents or profits of the Collateral (collectively, the "Cash Collateral"), shall constitute the Cash Collateral of the Prepetition Lenders. LaSalle and Sun Bachrach have, subject only to the Carve-Out (as defined below), a first and second priority perfected lien and security interest, respectively, in the Cash Collateral pursuant

to the applicable provisions of the Prepetition Claim Documents, Bankruptcy Code §§ 363(a) and 552(b), and this Amended Final Cash Collateral Order.

6. The Debtor shall segregate and account to the Prepetition Lenders for all Cash Collateral that it now possesses, that it has permitted to be transferred into the possession of others, if any, that is being held by those in privity with the Debtor, or that the Debtor might hereafter obtain or have any interest in, to include, if any, Cash Collateral received by the Debtor since the Petition Date and prior to the entry of this Amended Final Cash Collateral Order. The Debtor shall account to the Prepetition Lenders for the receipt and use, if any, of the Cash Collateral received by the Debtor since the Petition Date and prior to the entry of this Amended Final Cash Collateral Order. The Debtor is strictly prohibited from using the Cash Collateral except as expressly provided in this Amended Final Cash Collateral Order.

**Need For and Consent To Limited Use Of Cash Collateral**

7. The Prepetition Lenders do not consent to the Debtor's use of Cash Collateral, except in strict accordance with the terms and conditions contained in this Amended Final Cash Collateral Order.

8. Without the use of Cash Collateral, the Debtor will not have the funds necessary to preserve and dispose of the Prepetition Collateral, maintain its assets, provide financial information, pay employees, payroll taxes, inventory suppliers and other vendors, overhead, lease expenses, and other expenses necessary for the sale or orderly liquidation of the Debtor's business and to maximize the value of the Debtor's assets. The Debtor's efforts in connection with such sale or orderly liquidation require the use of Cash Collateral as provided herein.

9. The Debtor has requested that the Prepetition Lenders consent to the use of Cash Collateral for such purposes set forth in the Budget (as defined herein), and such other purposes as permitted by this Amended Final Cash Collateral Order and to which the Prepetition Lenders consent in writing, in order to avoid immediate and irreparable harm to the Debtor's estate that will occur if this Amended Final Cash Collateral Order is not immediately approved.

10. Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The use of Cash Collateral will benefit the Debtor and its estate. The ability of the Debtor to attempt to conduct a sale or orderly liquidation of its business depends upon the Debtor's ability to use the Cash Collateral of the Prepetition Lenders. Accordingly, the use of Cash Collateral by the Debtor is actual and necessary to preserve its estate and will avoid immediate and irreparable harm to the Debtor, its estate, and its assets.

11. The agreements and arrangements authorized in this Amended Final Cash Collateral Order have been negotiated at arms-length, are fair and equitable under the circumstances, and are enforceable pursuant to their terms. The Prepetition Lenders and the Debtor have acted in good faith in the negotiation and preparation of this Amended Final Cash Collateral Order, have been represented by counsel, and intend to be and are bound by its terms.

**Authorization For Limited Use Of Cash Collateral**

12. The Debtor is hereby authorized, on a limited basis, to use Cash Collateral only in strict accordance with the terms and conditions provided in this Amended Final Cash Collateral Order, including, without limitation, the Budget. Furthermore, the

Debtor is authorized and hereby agrees to perform any and all acts reasonably required by the Prepetition Lenders to comply with the terms and conditions of this Amended Final Cash Collateral Order.

13. The provisions of this Amended Final Cash Collateral Order affecting Cash Collateral are entered pursuant to, and shall be construed and be consistent with, Bankruptcy Code § 363 and Bankruptcy Rules 4001(b)(2) and 4001(d), to prevent immediate and irreparable harm to the Debtor.

**Cash Collateral Accounts**

14. From and after the Petition Date, the Debtor shall cause all cash receipts, collected from any source and of any nature, including the operation and/or liquidation of its business and assets, to be remitted, as expeditiously as possible, to the appropriate depository account, with a daily sweep of all net account balances to the Prepetition Lender's concentration account in accordance with the existing cash management provisions set forth in the LaSalle Prepetition Claim Documents (the "Cash Collateral Accounts"). With respect to any and all other accounts into which collections are ever deposited, the Debtor shall irrevocably authorize and direct, in writing, in a form and of substance satisfactory to LaSalle, each such bank to send via wire transfer all funds deposited into each such account to the Cash Collateral Accounts.

15. The Debtor shall be prohibited from using the funds from the Cash Collateral Accounts except as provided for in the Budget, this Amended Final Cash Collateral Order or other Orders of this Court. The Cash Collateral Accounts shall be maintained for the purpose of complying with this Amended Final Cash Collateral Order,

and shall be separate from any other accounts of the Debtor that have been established as "debtor in possession" accounts.

16. The Debtor shall cause funds from the Cash Collateral Account to be transferred to the debtor in possession operating account for use by the Debtor subject to the terms and provisions of the Budget and this Amended Final Cash Collateral Order, including, without limitation, the provisions of Paragraph 17, below. The Prepetition Lenders shall have no obligation to provide any provisional credit for items presented. The Debtor shall comply with all rules and regulations of the Office of the United States Trustee in connection with the accounts referenced above except as modified by orders of this Court.

17. In the event an item is presented that is not within the Budget (as defined herein), and for which the Debtor has not given a stop payment order, and such item is cleared, the Prepetition Lenders shall have no liability regarding same and the Debtor's sole remedy shall be recovery from the transferee.

**<u>ADEQUATE PROTECTION OF PREPETITION LENDERS' INTERESTS</u>**

**Budgeted Cash Collateral Usage**

18. As partial adequate protection of the Prepetition Lenders' Interests in the Prepetition Collateral and for the Debtor's use of Cash Collateral, the Debtor may not request the transfer of, or use Cash Collateral, except (a) to pay actual, ordinary, and necessary expenses set forth in, and in strict compliance with, the Budget attached hereto as Exhibit "A," or as such budget may be modified in writing with the prior written consent of the Prepetition Lenders (and no such consent shall be inferred from any other action, inaction, or acquiescence of the Prepetition Lenders), with a copy of any

such modified budget to be filed promptly with this Court (the "Budget"), or (b) as further provided herein. In no event shall the Debtor use any of the Prepetition Lenders' Cash Collateral to pay any items (i) in excess of 110% of the aggregate amounts set forth in the Budget (but never more than $100,000 in total), or (ii) in advance of the week in which a cash disbursement is scheduled to be paid.

**Replacement Liens and Super Priority Administrative Claims**

19. Subject to Paragraph 61 hereof, as partial adequate protection for any use or diminution in the value of the Prepetition Lenders' Interest in the Prepetition Collateral and Cash Collateral, this Court grants LaSalle and Sun Bachrach, (i) retroactively effective as of the Petition Date, valid and perfected replacement liens and additional liens and security interests (the "Replacement Liens"), of the highest available priority, subject only to the Prior Liens (as defined below) and the Carve-Out, in and upon all of the properties and assets of the Debtor, real or personal, tangible and intangible, including, but not limited to, the Prepetition Collateral and all of the other assets described in the Prepetition Claim Documents, whether acquired before or after the Petition Date, whether now owned and existing or hereafter acquired, created, or arising, and all products and proceeds thereof (including, without limitation, claims of the Debtor against third parties for loss or damage to such property), including all accessions thereto, substitutions and replacements therefor, and wherever located and all assets acquired by the Debtor post-petition and recoveries by the estate under any provision of the Bankruptcy Code or other applicable law, (except that the net proceeds of any avoidance action under Chapter 5 of the Bankruptcy Code[3], other than

[3] After payment of all costs and fees associated with such avoidance actions.

recoveries pursuant to §549 of the Bankruptcy Code on account of the Prepetition Collateral, shall only serve as adequate protection to Sun Bachrach (a) on a 75/25 shared basis with the estate (the estate gets 25%), (b) up to the maximum amount of $400,000.00, and (c) as the last dollars paid on account of Sun Bachrach's allowed secured claim) (the "Adequate Protection Collateral"); (ii) the proceeds of any leases (but not the leases or leasehold interests themselves); and (iii) the proceeds of augmented inventory (but not the augmented inventory itself) (the proceeds referred to in clauses (ii) and (iii) hereinabove are referred to hereinafter as the "Additional Adequate Protection Collateral"). The Replacement Liens granted hereby to LaSalle are senior to the Replacement Liens granted hereby to Sun Bachrach. Additionally, the expedited schedule providing for the auction of substantially all of the Prepetition Collateral on June 29, 2006 served as additional adequate protection to the Prepetition Lenders. The adequate protection provided herein is not exclusive and is provided without prejudice to the Prepetition Lenders' rights regarding additional adequate protection. The liens and security interest granted in this Paragraph 19 shall be limited to the extent of the aggregate diminution subsequent to the Petition Date in the value of the Prepetition Lenders' Interest in the Prepetition Collateral, whether by depreciation, use, sale, loss, decline in market price or otherwise, including (a) the Carve-Out, and (b) such diminution as may arise from the payment or application of Prepetition Collateral (including Cash Collateral) in accordance with this Amended Final Cash Collateral Order, the Original Cash Collateral Order or otherwise.

20.    As adequate protection for any use or diminution in the value of the interest of Edgar H. Bachrach, as collateral agent ("Bachrach"), in the Prepetition

Collateral and Cash Collateral, if any, this Court grants Bachrach, retroactively effective as of July 16, 2006, replacement liens and security interests (the "Bachrach Replacement Liens"), to the same extent, amount, priority, validity and avoidability as Bachrach pre-petition liens, subject to the Replacement Liens, the Prior Liens (as defined below) and the Carve-Out, in and upon all of the same properties and assets of the Debtor, real or personal, tangible and intangible, as to which the pre-petition Bachrach liens extended, and all products and proceeds thereof (including, without limitation, claims of the Debtor against third parties for loss or damage to such property), including all accessions thereto, substitutions and replacements therefor, and wherever located and all assets acquired by the Debtor post-petition and recoveries by the estate under any provision of the Bankruptcy Code or other applicable law, (but excluding all proceeds of any avoidance action under Chapter 5 of the Bankruptcy Code, other than recoveries pursuant to §549 of the Bankruptcy Code on account of the Prepetition Collateral. The Bachrach Replacement Liens granted hereby to Bachrach are subordinate and subject to the Replacement Liens granted hereby to LaSalle and Sun Bachrach, subject to Paragraph 61 hereof.

21.     To the extent such adequate protection is insufficient to adequately protect the Prepetition Lenders' Interest in the Prepetition Collateral, the Prepetition Lenders shall have an allowed claim under section 507(a)(2) of the Bankruptcy Code, which claim is and shall at all times during the pendency of this Case or any successor case have super priority in accordance with the provisions of section 507(b) of the Bankruptcy Code over all administrative expenses of the kind specified in the Bankruptcy Code, subject only to the Carve-Out.

## ADDITIONAL CASH COLLATERAL USAGE AND ADEQUATE PROTECTION TERMS

22. Within three (3) business days of entry of this Amended Final Cash Collateral Order, the Debtor shall pay to Sun Bachrach[4] no less than $2,179,577.00 on account of the Sun Bachrach Prepetition Claim (the "Initial Sun Bachrach Payment"). Thereafter, to the extent the estate accumulates at least $200,000.00 in excess of the amounts reserved to fund the Budget (the "Excess Cash Amount"), the Debtor shall pay such sum to Sun Bachrach. The Initial Sun Bachrach Payment, as well as any subsequent payments to Sun Bachrach (collectively, the "Sun Bachrach Payments"), will be subject to the Paragraph 61 of this Amended Final Cash Collateral Order. The Sun Bachrach Payments will be held by Sun Bachrach in a segregated, interest-bearing account (the "Account"), and will not be transferred, disbursed or otherwise utilized except as authorized by subsequent order of this Court, the jurisdiction of which Court is consented to by Sun Bachrach; provided, however, that Sun Bachrach is authorized to immediately use $170,000.00 of the Initial Sun Bachrach Payment to pay the Incentive Plan payments to certain executives of the Debtor.

### Prior Liens; Fees; Carve-Out

23. The security interests and liens of the Prepetition Lenders granted pursuant to the terms of this Amended Final Cash Collateral Order shall not have priority over (a) prior perfected and unavoidable liens and security interests in property of the Debtor's estate as of the Petition Date, other than the Prepetition Lenders' liens in the Prepetition Collateral (the "Prior Liens"), provided that (i) the Prior Liens are prior to

[4] Certain portions of the payments to be made to Sun Bachrach pursuant to this Paragraph 22 shall be subject to the Subordinated carve Out as provided in Paragraph 45 hereof.

the Prepetition Lenders' liens and security interests pursuant to the Prepetition Claim Documents, and are valid, perfected, and non-avoidable in accordance with applicable law, and (ii) the foregoing is without prejudice to the rights of the Debtor or any other party in interest, including the Prepetition Lenders, to object to the validity, priority, or extent of such Prior Liens, the enforceability of any subordination agreements or arrangements, the allowance of such debts secured by such Prior Liens, or to institute any actions or adversary proceedings with respect thereto; (b) the quarterly fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930; (c) the fees and expenses of the Clerk of this Court; or (d) the Senior Carve-Out (as defined below). Additionally, the security interests and liens of Sun Bachrach granted pursuant to the terms of this Amended Final Cash Collateral Order shall not have priority over the Subordinated Carve-Out (defined below).

**Automatic Perfection**

24. Subject only to Paragraph 61 hereof, this Amended Final Cash Collateral Order and the Prepetition Claim Documents shall be sufficient and conclusive evidence of the priority, perfection, attachment, and validity of all of the Prepetition Lenders' security interests in, and liens on, as applicable, the Prepetition Collateral, the Adequate Protection Collateral, the Additional Adequate Protection Collateral, and the Cash Collateral (collectively, the "Collateral") and the liens and security interests granted and created herein shall, by virtue of this Amended Final Cash Collateral Order, constitute valid, automatically perfected and unavoidable security interests, with the priorities granted hereunder, without the necessity of creating, filing, recording, or serving any financing statements or other documents that might otherwise be required under federal

or state law in any jurisdiction or the taking of any other action to validate or perfect (a) the security interests and liens granted to the Prepetition Lenders under this Amended Final Cash Collateral Order or (b) the adequate protection replacement liens and security interests granted herein to the Prepetition Lenders, for all purposes, including, without limitation, the payment of all principal, interest, and other fees, including reasonable attorneys' fees and expenses of the Prepetition Lenders in connection with the Debtor's use of Cash Collateral.

25.    To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the Prepetition Lenders' liens and security interests authorized, ratified, or created by this Amended Final Cash Collateral Order, or otherwise would impose filing or registration requirements with respect to such replacement liens, such law is hereby preempted to the maximum extent permitted by the Bankruptcy Code, otherwise applicable federal law, and the judicial power of the United States Bankruptcy Court.

26.    By virtue of the terms of this Amended Final Cash Collateral Order, to the extent that the Prepetition Lenders have filed Uniform Commercial Code financing statements or mortgages under the name of the Debtor, such filings shall be deemed to properly perfect its liens and security interests in the Collateral under this Amended Final Cash Collateral Order without further action by the Prepetition Lenders, subject to the rights of other parties in interest to challenge in compliance with Paragraphs 61-63 of this Amended Final Cash Collateral Order.

27.    Until the LaSalle Prepetition Claim shall have been indefeasibly paid and satisfied in full by its terms, and without further order of the Court, the Debtor shall not,

without prior written approval from the Prepetition Lenders, engage in any transaction that is not in the ordinary course of the Debtor's businesses, except as contemplated in Paragraph R hereof or otherwise approved by the Court.

**No Additional Liens**

28. Until the LaSalle Prepetition Claim and Sun Bachrach Prepetition Claim each shall have been indefeasibly paid and satisfied in full by its terms, the Debtor shall not be authorized to obtain credit secured by a lien or security interest in the Prepetition Collateral or Cash Collateral without the prior written consent of LaSalle and/or Sun Bachrach, unless the terms of such financing provide that the LaSalle Prepetition Claim and the Sun Bachrach Prepetition Claim each shall be paid and satisfied in full at the closing of such financing.

**Automatic Stay**

29. Upon three (3) business days' written notice to the Debtor, the Committee and the Office of the United States Trustee, the Automatic Stay shall be vacated and modified to the extent necessary to permit (a) the Debtor and the Prepetition Lenders to commit all acts and take all actions necessary to implement this Amended Final Cash Collateral Order, and (b) all acts, actions, and transfers contemplated herein including, without limitation, indefeasible transfers of Cash Collateral and other funds to the Prepetition Lenders by the Debtor and the application by the Prepetition Lenders of same as provided herein.

**Collateral Insurance, Maintenance, Taxes, Deposits**

30. The Debtor shall use Cash Collateral to maintain insurance of the kind covering the Collateral, and in accordance with the LaSalle Prepetition Claim

Documents (covering such risks in amounts as shall be satisfactory to the Prepetition Lenders and shall name the Prepetition Lenders as loss payees thereunder) including, without limitation, insurance covering the Collateral and such other collateral of the Prepetition Lenders, if any, as the Prepetition Lenders may from time to time reasonably request, and, at the Prepetition Lenders' request, deliver to the Prepetition Lenders evidence of the maintenance of such insurance.

31. The Debtor shall use Cash Collateral to make any and all payments necessary to keep the Collateral and its other property in good repair and condition and not permit or commit any waste thereof, subject to the Budget.

32. The Debtor hereby confirms that all payments to all taxing authorities with respect to the Collateral are current at the present time, except as incurred in the ordinary course of business or which are the subject of a bona fide dispute and for which there are adequate reserves.

33. [Intentionally Omitted.]

**Reporting Requirements**

34. The Debtor is authorized and directed to provide to the Prepetition Lenders, with copies to the Committee, such of the documentation and reports required under the LaSalle Prepetition Claim Documents, including schedules, assignments, financial statements and insurance policies and endorsements, as the Prepetition Lenders may from time to time request (the "Reporting Information").

35. The Reporting Information shall also include: (a) copies of all reports filed with the Office of the United States Trustee simultaneously with such filing and (b) within two (2) business days of any such request, such additional financial or other

information concerning the acts, conduct, property, assets, liabilities, operations, financial condition, and transactions of the Debtor, or concerning any matter that may affect the administration of the estate, as the Prepetition Lenders may from time to time reasonably request. All Reporting Information shall be in accordance with accounting principles consistently applied with past accounting principles and reporting of the Debtor to the Prepetition Lenders.

36.     The Prepetition Lenders and their respective agents shall have full access, upon reasonable notice during normal business hours, to the Debtor's business records, business premises, and to the Collateral to enable the Prepetition Lenders or their agents to (a) review, appraise, and evaluate the physical condition of the Collateral, (b) inspect and review the financial records and all other records of the Debtor concerning the operation of the Debtor's business, and (c) evaluate the Debtor's overall financial condition and all other records relating to the operations of the Debtor. The Debtor shall fully cooperate with the Prepetition Lenders and their agents regarding such reviews, evaluations, and inspections, and shall make its employees and professionals available to the Prepetition Lenders and their agents to conduct such reviews, evaluations, and inspections.

37.     [Intentionally omitted.]

## EVENTS OF DEFAULT/REMEDIES

### Events of Default

38.     The occurrence of any of the following shall constitute an Event of Default under this Amended Final Cash Collateral Order, after two (2) business days written notice to the Debtor by the Prepetition Lenders: (a) any default, violation, or breach of

any of the terms of this Amended Final Cash Collateral Order by the Debtor; (b) the dismissal of this Case or the conversion of this Case to a case under Chapter 7 of the Bankruptcy Code (no notice required); (c) the appointment of a Trustee or examiner in this Case (no notice required); (d) the entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending this Amended Final Cash Collateral Order without the express written consent of the Prepetition Lenders, (e) the granting of any other security interest, lien, claim, or encumbrance on the Collateral, other than as consented to in writing by the Prepetition Lenders; (f) the entry of an order granting relief from the automatic stay to the holder or holders of any security interest or lien to permit the pursuit of any judicial or non-judicial transfer or other remedy against any material assets of the Debtor; (g) any challenge to the extent, validity, priority, character, or unavoidability of LaSalle's liens securing the LaSalle Prepetition Claim, except to the extent that such challenge is not funded with any Cash Collateral and does not otherwise violate the terms of this Amended Final Cash Collateral Order; (h) any expenditure of Cash Collateral at variance from the Budget requirements of Paragraph 18 hereof; (i) the failure of the Debtor to maintain all insurance required under the LaSalle Prepetition Claim Documents and this Amended Final Cash Collateral Order; (j) any of the foregoing events of default being referred to in this Amended Final Cash Collateral Order, individually, as an "Event of Default", or collectively, as "Events of Default".

**Remedies**

39. Upon the delivery by LaSalle or Sun Bachrach of three (3) business days' written notice to the Debtor, the Committee and the Office of the United States Trustee,

served by overnight delivery service or facsimile (the "Default Notice"), of the occurrence of any Event of Default, and at all times thereafter, and upon further hearing at which the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and an order of this Court is entered finding an Event of Default has occurred and is continuing: (a) the Prepetition Claims and any postpetition claims of the Prepetition Lenders shall be deemed immediately accelerated to the extent not already accelerated, and become due and payable, and (b) the Debtor's authority to use Cash Collateral and any and all obligations of the Prepetition Lenders under this Amended Final Cash Collateral Order shall terminate.

40.    [Intentionally omitted.]

41.    Upon entry of an order of this Court finding an Event of Default has occurred and is continuing, as an alternative to Paragraph 39 above, in the event that LaSalle's Prepetition Claim has been paid and satisfied in full by its terms and subsequently, a party in interest challenges the extent, priority, validity, perfection, amount, character, or allowability of the LaSalle Prepetition Claim or security interests, or other claims or matters arising out of or related to the LaSalle Prepetition Claim Documents, the LaSalle Prepetition Claim, the Prepetition Collateral, the prepetition relationship between the Debtor and LaSalle, and all acts or omissions related thereto, then, at the option of LaSalle in its sole and exclusive discretion: (a) LaSalle shall be granted, without further order of the Court, relief from the Automatic Stay and the Automatic Stay shall be terminated as to LaSalle, the LaSalle Prepetition Claim, and the Collateral, so as to permit LaSalle to pursue its rights and remedies pursuant to the

LaSalle Prepetition Claim Documents, and applicable law, and (b) LaSalle shall be authorized, in its discretion, to take any and all actions and remedies that LaSalle may deem appropriate to proceed against, take possession of, protect, and realize upon the Collateral and any other property of the estate of the Debtor upon which LaSalle has been or may hereafter be granted liens and security interests to obtain repayment of the LaSalle Prepetition Claim, provided that LaSalle shall not be obligated to take title to any of the Collateral in the pursuit of LaSalle's rights and remedies.

42. Notwithstanding the foregoing, the Prepetition Lenders reserve the right to seek other emergency relief, as may be necessary, pursuant to the applicable provisions of the Bankruptcy Code or other applicable law.

43. In connection with any actions to be taken pursuant to this Amended Final Cash Collateral Order, LaSalle may, with Court approval, establish and maintain cash collateralization reserve accounts in amounts to be reasonably determined by LaSalle in its discretion, so as to provide adequate protection and security for the Debtor's continuing indemnification obligations to LaSalle under the LaSalle Prepetition Claim Documents and this Amended Final Cash Collateral Order.

**Professional Fees**

44. The liens granted to the Prepetition Lenders in this Amended Final Cash Collateral Order shall, in all respects, be subject and subordinate to a carve-out of Cash Collateral (the "Senior Carve-Out") for the payment of (i) the United States Trustee's fees pursuant to 28 U.S.C. § 1930 and (ii) allowed fees and expenses of the Debtor's and Committee's Court-approved professionals during the pendency of this Case in amounts not to exceed those set forth in the following paragraph.

45. The Debtor shall be authorized to pay compensation and reimbursement of expenses allowed and payable under Bankruptcy Code §§ 330 and 331 to Court-approved professionals of the Debtor and Committee, if any, monthly, or as the same may be due and payable, in accordance with the July 6, 2006 order of the Court establishing procedures for interim compensation and reimbursement of expenses of professionals. The Senior Carve-Out shall be in an amount equal to, as of the Expiration Date (as defined below), the sum of (a) all monthly professional fees and expenses of attorneys, accountants, financial advisors and consultants retained by the Debtor as set forth in the Budget, any pre-petition retainers paid to the respective professionals, and up to a maximum additional amount of $150,000 (the "Debtor's Professional Expenses"); (b) all monthly professional fees and expenses of attorneys, accountants, financial advisors and consultants retained by the Committee as set forth in the Budget, any pre-petition retainers paid to the respective professionals, and up to a maximum additional amount of $125,000 (the "Committee Professional Expenses" and together with the Debtor's Professional Expenses, the "Professional Expenses"); (c) quarterly fees required to be paid pursuant to 28 U.S.C. Section 1930(a) ("U.S. Trustee Fees"); and (d) reasonable fees and expenses of a trustee under Section 326 ("Chapter 7 Trustee's Fees") up to a maximum amount of $5,000. The Carve-Out shall be paid from the first proceeds from sale or liquidation of the Collateral and shall be delivered to counsel to the Debtor to be held in escrow in accordance with the provisions of this Amended Final Cash Collateral Order. Any amounts so delivered shall continue to constitute the Cash Collateral of the Prepetition Lenders. The Senior Carve-Out shall be used to pay the Professional Expenses, the U.S. Trustee Fees, and/or the Chapter 7

Trustee's Fees if, and only if, and only to the extent that the other assets, if any, of the Debtor's estate are insufficient to pay the Professional Expenses, the U.S. Trustee Fees, and the Chapter 7 Trustee's Fees. Any payment of fees and expenses in this Case shall be included as a diminution of Cash Collateral in any calculation regarding adequate protection of the Prepetition Lenders' interest in property of the estate. For purposes hereof, the "Subordinated Carve-Out", which, together with the Senior Carve Out is collectively, the "Carve-Out", means an amount equal to $1,000,000 (which amount represents (i) fifty percent (50%) of the consideration received on account of leasehold or augmentation proceeds up to $400,000, and (ii) seventy percent (70%) of the consideration received on account of leasehold or augmentation proceeds in excess of $400,000). The Subordinated Carve Out will be paid by the Debtor as part of the Sun Bachrach Payments, with each such Subordinated Carve Out payment to be in an amount equal to 18.52% of the Excess Cash Amount[5]. To the extent that the final allowed Sun Bachrach secured claim (the "Allowed Secured Claim") is either greater or lesser than $5,570,000 (the difference being the "Variance"), then the Subordinated Carve Out will be adjusted, up or down as applicable, in an amount equal to 50% of the Variance; provided, however, that if the Allowed Secured Claim is less than $5,370,000, then the Subordinated Carve Out will be adjusted down in an amount equal to 18.52% of the Variance below $5,370,000; and further provided, however, that if (a) the Allowed Secured Claim is less than $5,000,000 (other than due to (x) the failure of Sun Bachrach and its predecessor in interest (Harris) to be found to have advanced, in the

[5] This calculation is based on a presumed allowed secured claim of Sun Bachrach in the amount of $5,570,000 (inclusive of interest, costs and fees), of which $1,000,000 is to ultimately be paid on account of the Subordinated Carve Out.

aggregate, at least $5,000,000, or (y) Sun Bachrach's voluntary acceptance of an amount less than $5,000,000 without the prior consent of the Committee)), or (b) (i) the allowed secured claim of Bachrach is determined to have a priority senior to that of Sun Bachrach and (ii) Sun Bachrach actually receives less than $5,000,000 on account of its Allowed Secured Claim, then the agreements herein respecting the Sun Bachrach Payments, the Additional Adequate Protection Collateral and the Subordinated Carve Out are null and void, and of no effect. To the extent that the proceeds of the Collateral ultimately collected by the Debtor and paid to Sun Bachrach are inadequate to pay the Allowed Secured Claim (the "Shortfall"), then the Subordinated Carve Out will be reduced by 18.52% of every dollar of such Shortfall. Once the liquidated amount of the obligations underlying the asserted secured claim of Sun Bachrach is fixed by the Court in an amount of not less than $5,000,000, then Sun Bachrach is authorized and directed to wire from Account the amount of the Sun Bachrach Payments made on account of the Subordinated Carve Out directly to a separate trust account (the "GUC Trust Account"), to be maintained by Kronish Lieb Weiner & Hellman, LLP, for the benefit of non-priority general unsecured creditors in this case, excluding any deficiency claims of Sun Bachrach, free and clear of all liens, claims and encumbrances; provided, however, that such funds (i) remain subject to Paragraph 61 of this Amended Final Cash Collateral Order, (ii) remain subject to the jurisdiction of this Court and (iii) will not be transferred, disbursed or otherwise utilized except as authorized by subsequent order of this Court.

46.    The Carve-Out shall not be used for the payment or reimbursement of any fees, expenses, costs, or disbursements of any of the professionals retained by the

Committee incurred in connection with the assertion, prosecution, or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense, or contested matter, the purpose of which is to seek any order, judgment, determination, or similar relief (i) invalidating, setting aside, avoiding, recharacterizing, or subordinating in whole or part either of the Prepetition Lender's liens and security interests provided by the Prepetition Claim Documents or this Amended Final Cash Collateral Order, (ii) delaying, limiting, hindering, or preventing the prompt, full, and indefeasible payment of the LaSalle Prepetition Claims and/or the Sun Bachrach Prepetition Claims, or (iii) preventing, hindering, or delaying, whether directly or indirectly, LaSalle's and/or Sun Bachrach's assertion, enforcement, or realization upon any Collateral. However, nothing in this Paragraph 46 shall limit or restrict the use of Cash Collateral for the payment or reimbursement of any fees, expenses, costs, or disbursements of professionals retained by the Committee in connection with the formal or informal investigation of any such potential claim or action.

47. The Prepetition Lenders reserve the right to object to the Professional Expenses and nothing herein shall be construed to obligate the Prepetition Lenders in any way to pay the Professional Expenses, the U.S. Trustee Fees, or the Chapter 7 Trustee Fees, or to assure that the Debtor has sufficient funds in excess of the Senior Carve-Out on hand to pay any Professional Expenses, U.S. Trustee Fees, or Chapter 7 Trustee Fees.

48. After a final fee application has been approved for the Debtor's Court-approved professionals, all remaining unapplied retainer funds and/or funds from the Senior Carve-Out shall be immediately returned as the Prepetition Lenders' Cash

Collateral and shall be applied in reduction of the Prepetition Claims and/or any postpetition claims of the Prepetition Lenders.

**OTHER TERMS**

49. No priority claims shall be allowed that are or will be prior to or on a parity with the superpriority claims or secured claims of LaSalle or Sun Bachrach (other than the claim held by LaSalle) against the Debtor and its estate arising out of the Prepetition Claim Documents and this Amended Final Cash Collateral Order.

50. There shall not at any time be entered in the Case any other order that, except as consented to by the Prepetition Lenders, (a) authorizes the use of Cash Collateral, or the sale, lease, or other disposition of the Collateral, (b) authorizes the obtaining of credit or the incurring of indebtedness secured by a lien or security interest in property in which the Prepetition Lenders hold or assert liens or security interests, or (c) grants to any claim a priority administrative claim status that is equal or superior to the superpriority status granted to LaSalle or Sun Bachrach (other than the priority granted to LaSalle) herein.

51. The terms and provisions of this Amended Final Cash Collateral Order and any actions taken pursuant hereto, except for the termination of the Debtor's authority to use Cash Collateral, shall survive entry of any order that may be entered converting to chapter 7 or dismissing the Case. If an order is entered, whether *sua sponte* by the Court or otherwise, dismissing the Case or converting the Case to chapter 7, such order shall recognize that such dismissal or conversion shall not affect or diminish the Prepetition Lenders' rights, priorities, or remedies hereunder or under applicable law nor the rights of the Committee to receive the Subordinated Carve-Out.

52.     The terms and provisions of this Amended Final Cash Collateral Order as well as the priorities in payment, liens, and security interests granted pursuant to this Amended Final Cash Collateral Order shall continue in this or any superseding case under the Bankruptcy Code of the Debtor, and such priorities in payment, liens, and security interests shall maintain the priority provided by this Amended Final Cash Collateral Order.

53.     The provisions of this Amended Final Cash Collateral Order shall inure to the benefit of the Debtor and the Prepetition Lenders and they shall be binding upon (a) the Debtor and its successors and assigns, including any trustee or other fiduciary hereafter appointed as legal representative of the Debtor or with respect to property of the estate of the Debtor, whether under chapter 11 of the Bankruptcy Code or any subsequent chapter 7 case (after expiration of the Trustee Due Diligence Period (as defined herein)), and (b) all creditors of the Debtor and other parties in interest.

54.     If any or all of the provisions of this Amended Final Cash Collateral Order are hereafter modified, vacated, or stayed, such modification (which shall not occur without the prior written agreement of the Prepetition Lenders), vacation, or stay shall not affect (a) the validity of any obligation, indebtedness, or liability incurred by the Debtor to the Prepetition Lenders before the effective date of such modification, vacation, or stay or (b) the validity or enforceability of any security interest, lien, priority, or other protection authorized or created hereby.     Notwithstanding any such modification, vacation, or stay, any indebtedness, obligations, or liabilities incurred by the Debtor to the Prepetition Lenders before the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this

Amended Final Cash Collateral Order, and the Prepetition Lenders shall be entitled to all the rights, remedies, privileges, and benefits granted herein with respect to all such indebtedness, obligations, or liabilities.

55.     The Prepetition Lenders and the Debtor may agree to non-material modifications or amendments to this Amended Final Cash Collateral Order without further order of the Court.

56.     No approval, agreement, or consent requested of the Prepetition Lenders by the Debtor pursuant to the terms of this Amended Final Cash Collateral Order or otherwise shall be inferred from any action, inaction, or acquiescence of the Prepetition Lenders other than a writing acceptable to and signed by the Prepetition Lenders, and expressly showing such approval, agreement, or consent.  Nothing herein shall in any way affect the rights of the Prepetition Lenders as to any non-Debtor entity.

57.     Nothing herein shall be deemed or construed to waive, limit, or modify the rights of the Prepetition Lenders to seek additional relief in this Case in accordance with any provision of the Bankruptcy Code or applicable law.

58.     This Amended Final Cash Collateral Order, and the findings of fact and conclusions of law contained herein, shall be effective upon signature by the Court, and may be relied upon by the Prepetition Lenders and the Debtor upon entry by this Court. To the extent any findings herein may constitute conclusions, and vice versa, they are hereby deemed as such.

59.     This Court hereby expressly retains jurisdiction over all persons and entities, co-extensive with the powers granted to the United States Bankruptcy Court

under the Bankruptcy Code, to enforce the terms of this Amended Final Cash Collateral Order and to adjudicate any and all disputes in connection therewith.

**COMMITTEE/TRUSTEE RESERVATION/DEADLINE TO ACT**

60. Subject only to Paragraph 61 of this Amended Final Cash Collateral Order, the Debtor on its behalf and its estate, and its successors, including any subsequently appointed trustee, hereby: (i) releases and discharges LaSalle and its affiliates, attorneys, officers, directors, employees, predecessors, successors, and assigns from any and all claims and causes of action arising out of, based upon or related to the LaSalle Prepetition Claim Documents and; (ii) waives any and all claims, defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, character, and avoidability (under Chapter 5 of the Bankruptcy Code or otherwise) of the LaSalle Prepetition Claim or the security interests and liens granted to secure the LaSalle Prepetition Claim, and (iii) agrees, without further Court order, to the allowance of the LaSalle Prepetition Claim as a fully secured claim (to the extent of the value of the Prepetition Collateral in accordance with Bankruptcy Code § 506(b)) in the amount of the LaSalle Prepetition Claim pursuant to Bankruptcy Code §§ 502 and 506(a)(1) and (b) of the Bankruptcy Code. The release, discharge, waivers and agreements set forth in this Paragraph 60 were effective upon the date the Original Final Order was entered, subject only to the right of the Committee and any other party in interest to object on the terms and conditions set forth in Paragraph 61 of this Amended Final Cash Collateral Order.

61. The Committee is hereby granted standing and the authority to file an objection or complaint on behalf of the estate raising any of claims or defenses, without

further motion seeking authority to bring such action and without further order of this Court. LaSalle and Sun Bachrach reserve the right to assert any and all defenses and counterclaims, except lack of standing. Parties in interest, including the Committee (but not the Debtor as it relates to LaSalle in light of the release, discharge, waivers and agreements set forth in Paragraph 60 above), shall have (i) Thirty (30) days from July 6, 2006 (the date of entry of the Original Final Order), unless otherwise extended by written agreement with LaSalle, (such thirty-day period, the "LaSalle Due Diligence Period") and (ii) 120 days from July 6, 2006, unless otherwise extended by written agreement with Sun Bachrach or otherwise extended by order of the Court for cause, (such 120-day period, the "Sun Bachrach Due Diligence Period")[6], to file an objection or complaint pursuant to Bankruptcy Rule 7001 or otherwise, asserting a claim or cause of action arising out of the respective LaSalle and/or Sun Bachrach Prepetition Claim Documents, or otherwise challenging the extent, priority, validity, perfection, amount, character, or allowability of the LaSalle and/or Sun Bachrach Prepetition Claims or security interests, or other claims or matters arising out of or related to the LaSalle and/or Sun Bachrach Prepetition Claim Documents, the LaSalle and/or Sun Bachrach

6 Any subsequently appointed trustee shall have until the greater of (i) the remaining LaSalle Due Diligence Period and Sun Bachrach Due Diligence Period as of the date of the trustee's appointment or (ii) Thirty (30) days from such appointment (the "Trustee Due Diligence Period" and together, with the LaSalle Due Diligence Period and the Sun Bachrach Due Diligence Period, the "Due Diligence Periods") (unless, for good cause shown, the Court extends the Trustee Due Diligence Period on notice to all parties) to file a motion seeking authority from the Bankruptcy Court to file a complaint pursuant to Bankruptcy Rule 7001 or otherwise, asserting a claim or cause of action arising out of the respective LaSalle and/or Sun Bachrach Prepetition Claim Documents, or otherwise challenging the extent, priority, validity, perfection, amount, character, or allowability of the LaSalle and/or Sun Bachrach Prepetition Claims or security interests, or other claims or matters arising out of or related to the LaSalle and/or Sun Bachrach Prepetition Claim Documents, the LaSalle and/or Sun Bachrach Prepetition Claims, the Prepetition Collateral, the prepetition relationship between the Debtor and LaSalle and/or Sun Bachrach, and all acts or omissions related thereto.

Prepetition Claims, the Prepetition Collateral, the prepetition relationship between the Debtor and LaSalle and/or Sun Bachrach, and all acts or omissions related thereto.

62. To the extent any such objection or complaint is filed and LaSalle and/or Sun Bachrach successfully defends same, LaSalle and/or Sun Bachrach, respectively, shall be entitled to recover all costs and expenses, including, but not limited to, reasonable attorneys' fees and expenses, incurred in defending the objection or complaint, which costs and expenses shall be secured by a lien in all Collateral and shall constitute an administrative expense claim with priority over other claims to the same extent as the administrative expense claim set forth hereinabove. In furtherance of the right of LaSalle to obtain reimbursement, LaSalle may establish and maintain cash collateralization reserve accounts in amounts to be reasonably determined by LaSalle in its discretion, with Court approval, so as to provide adequate protection and security for the Debtor's continuing indemnification obligations hereunder.

63. Otherwise, if no action is timely commenced pursuant to Paragraph 61, (i) any and all challenges to the enforceability, priority, extent, character, and validity of LaSalle's and Sun Bachrach's claims and interests, of any nature, including, without limitation, the LaSalle and Sun Bachrach Prepetition Claims and LaSalle's and Sun Bachrach's security interests in the Collateral, shall be forever barred, (ii) the stipulations contained in the Original Final Order and this Amended Final Cash Collateral Order shall be binding upon all parties in interest, (iii) the LaSalle and Sun Bachrach Prepetition Claims and LaSalle's and Sun Bachrach's security interests in the Collateral shall be forever binding upon the Debtor's bankruptcy estate, and all other parties in interest to this Case and (iv) any and all challenges, defenses, claims, offsets,

or counterclaims, including, but not limited to, those under §§ 105, 510, 544, 547, 548, 549, 550, 552, and/or 553 of the Bankruptcy Code, to or with respect to the LaSalle and Sun Bachrach Prepetition Claims, or LaSalle's and Sun Bachrach's security interest in, or liens against, the Collateral by any party are and shall be forever barred.

**NOTICE**

64. The Debtor's counsel shall serve this Amended Final Cash Collateral Order on all of the following parties: (a) the Office of the United States Trustee; (b) counsel for the Prepetition Lenders; (c) counsel to the Committee; (d) all creditors known to Debtor who have or may assert liens against the Debtor's assets; (e) the United States Internal Revenue Service; and (f) all parties in interest who have filed a notice of appearance or upon whom service must be effected under the Bankruptcy Rules or the Local Rules of the Northern District of Illinois, Eastern Division.

65. Any notice, report, or other document required to be given hereunder shall be deemed given upon its deposit in the United States mail, postage pre-paid, and addressed as follows:

a. if to LaSalle:

LaSalle Retail Finance
25 Braintree Hill Office Park, Suite 25
Braintree, Massachusetts 02184
Attention: Robert Barnhard
Fax: (781) 353-6101
E-mail: robert.barnhard@abnamro.com

with copies to:

Donald E. Rothman, Esquire
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108

Fax: (617) 880-3456
E-mail: drothman@riemerlaw.com

and

John Sieger, Esquire
Katten Muchin Rosenman LLP
525 W. Monroe St.
Chicago, Illinois 60661-3693
Fax: (312) 577-8681
E-mail: john.sieger@kattenlaw.com

b.   if to Sun Bachrach:

Sun Capital Partners, Inc.
5200 Town Center Circle, Suite 470
Boca Raton, Florida 33486
Attention: Gerald Woelcke, Vice President
Fax: (561) 394-0540
E-mail: GWoelcke@suncappart.com

with a copy to:

Kirkland & Ellis LLP
200 E. Randolph Drive
Chicago, Illinois 60601
Attention: James A. Stempel, Esquire
Fax: (312) 660-0495
Email: jstempel@kirkland.com

c.   if to the Debtor:

Bachrach Clothing, Inc.
One Bachrach Court
Decatur, Illinois 62526
Attention: Kristin Sowa, Vice President
Fax: (217) 875-0030

with a copy to:

Robert M. Fishman, Esquire
Shaw Gussis Fishman Glantz Wolfson & Towbin LLC
321 North Clark Street
Chicago, Illinois 60610
Fax: (312) 980-3888
E-mail: rfishman@shawgussis.com

c. if to the United States Trustee:

Office of the United States Trustee
227 West Monroe Street
Suite 3350
Chicago, Illinois 60606
Fax: (312) 886-5794

d. if to the Committee:

Lawrence C. Gottlieb, Esquire
Cathy Hershcopf, Esquire
Kronish Lieb Weiner & Hellman LLP
1114 Avenue of the Americas
New York, New York 10036
Fax: (212) 479-6275
E-mail: lgottlieb@kronishlieb.com
chershcopf@kronishlieb.com

with a copy to:

Synde Keywell, Esquire
Law Offices of Neal, Gerber & Eisenberg LLP
Two North La Salle Street
Chicago, Illinois 60602-3801
Fax: (312) 269-1747
E-mail: skeywell@ngelaw.com

**EXPIRATION DATE/MATURITY**

66. The Prepetition Lenders' consent and Debtor's authority to use Cash Collateral under this Amended Final Cash Collateral Order shall be effective *nunc pro tunc* from the Petition Date to and including the earliest of: (a) the occurrence of an Event of Default or (b) January 31, 2007, at 5:00 p.m. Central Time, at which time all of the Debtor's authority to use Cash Collateral under this Amended Final Cash Collateral Order shall terminate, unless (i) extended by written agreement of the Debtor and the

Prepetition Lenders, a copy of which shall be promptly filed with this Court by the Debtor (the "Expiration Date") or (ii) otherwise extended by the Court.

**THE CASH COLLATERAL MOTION IS APPROVED**

**AND GRANTED AS SET FORTH HEREIN.**

Dated: July 27, 2006.

ENTERED:

Pamela S. Hollis

UNITED STATES BANKRUPTCY JUDGE

##End of Order##

**AGREED TO AND ACCEPTED:**

Robert M. Fishman, Esquire
Shaw Gussis Fishman Glantz Wolfson & Towbin LLC
321 North Clark Street
Chicago, Illinois 60610

**ATTORNEY FOR THE DEBTOR AND DEBTOR IN POSSESSION**

Donald E. Rothman, Esquire
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108

John Sieger, Esquire
Katten Muchin Rosenman LLP
525 W. Monroe St.
Chicago, Illinois 60661-3693

**ATTORNEYS FOR LASALLE RETAIL FINANCE**

James A. Stempel, Esquire
Kirkland & Ellis LLP
200 E. Randolph Drive
Chicago, Illinois 60601

**ATTORNEY FOR SUN BACHRACH**

Lawrence C. Gottlieb, Esquire
Cathy Hershcopf, Esquire
Kronish Lieb Weiner & Hellman LLP
1114 Avenue of the Americas
New York, New York 10036

Synde Keywell, Esquire
Law Offices of Neal, Gerber & Eisenberg LLP
Two North La Salle Street
Chicago, Illinois 60602-3801

**ATTORNEYS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

# EXHIBIT "A"

## BUDGET

DRAFT FOR DISCUSSION PURPOSES ONLY

**Bachrach Recovery Comparison Summary**

*(Dollars in Thousands)*

| | Combined Total | Estate Total | Lipman GA - JV Total |
|---|---|---|---|
| **Sources of Cash** | | | |
| Cash in Operating Account including Escrow (7/9) | | | |
| Cash Payment for Inventory | 10,874,220 | 10,874,220 | |
| Cash in Stores - Needs to be verified | 2,194,641 | 2,194,641 | |
| Credit Card Deposit - Commerce Bank | 125,000 | 125,000 | |
| Estimated Credit Card Receivables | - | - | |
| Guaranteed Augmentation Payment | 511,500 | 511,500 | |
| Non-Guaranteed Augmentation Payment | 360,000 | 360,000 | |
| Non-Guaranteed FF&E Payment | - | - | |
| Sales Prior to Closing of Going Concern Bid | - | - | |
| Sale of Ineligible Inventory | 733,036 | 733,036 | |
| Sale of Intellectual Property | - | - | |
| Investments held on balance sheet | - | - | |
| Reimbursement of Cure Payments from Lipman | 27,000 | 27,000 | |
| Reimbursement for 2nd half of July Rent payment | 263,000 | | 263,000 |
| Reimbursement from GA for Store employee expense | 552,270 | | 552,270 |
| Reimbursement of Mechanic Lien Payments from Lipman | 475,000 | | 475,000 |
| Creditors Committee Carveout repayment | 100,000 | | 100,000 |
| Debtors Professional Carveout and retainer repayment | 39,721 | 39,721 | |
| Est. Alliance Professional Carveout and retainer refund | 74,193 | 74,193 | |
| Other Sources of Cash | 104,583 | 104,583 | |
| **Total Cash and Consideration** | 105,000 | 105,000 | |
| | **16,539,164** | **15,148,894** | **1,390,270** |
| **Secured Lenders Carveout** | | | |
| Chapter 7 Trustee Fees Carveout | | | |
| Debtors Professional Carveout | 5,000 | 5,000 | |
| Creditors Committee Carveout | 150,000 | 150,000 | |
| **Total Securred Carveout** | 125,000 | 125,000 | |
| | **280,000** | **280,000** | - |
| **Consideration net of Secured Lenders Carveout** | | | |
| | **16,259,164** | **14,868,894** | **1,390,270** |
| **Senior Secured Claims** | | | |
| LaSalle Revolving Credit Facility and fees | | | |
| | 4,961,383 | 4,961,383 | |
| Sun Capital Secured | | | |
| Sun Charges (excluding Subordinated Carveouts): | 5,000,000 | 5,000,000 | |
| Executive sales incentive motion | | | |
| Funding required (to prevent administrative insolvency) | 170,000 | 170,000 | |
| Net Sun Capital Secured Claim | 365,508 | 365,508 | |
| Other Secured Claims | 4,464,492 | 4,464,492 | |
| **Total Secured Claim and Subordinate Carveouts** | - | - | |
| | **9,425,875** | **9,425,875** | - |
| Alliance Asset Sales Fee | | | |
| | 332,742 | 332,742 | |
| **Consideration in Excess (Short of)** | | | |
| **Senior Secured Claims and success fee** | | | |
| | **6,500,547** | **5,110,277** | **1,390,270** |

DRAFT FOR DISCUSSION PURPOSES ONLY

| | Combined | Estate | Lipman GA - JV |
|---|---|---|---|
| **Administrative & Priority Claims** | | | |
| Professional Fees | | | |
| Kronish Lieb (including local counsel and fincial advisor) | 349,259 | 349,259 | |
| Shaw Gussis (17) | 368,978 | 368,978 | |
| Alliance Monthly Fee (19) | 373,826 | 373,826 | |
| Total Professional Fees | 1,092,063 | 1,092,063 | |
| Non-Cured Stub Rent | 293,728 | 293,728 | |
| Cure Reserve for possible additional assigned leases | 100,000 | 100,000 | |
| US Trustee Fees | 20,000 | 20,000 | |
| Sales Taxes | 359,702 | 359,702 | |
| Post Petition Property Taxes - Decatur through July 1. | 21,179 | 21,179 | |
| Decatur property taxes July 2- July 13. | 6,139 | 6,139 | |
| Insurance | 184,443 | 184,443 | |
| Utilty expense/Decatur Chicago | 96,574 | 96,574 | |
| Rent and utilties post closing (shared services) | 45,000 | 45,000 | |
| Post Petition Accrued Expenses | 15,000 | 15,000 | |
| Estate Employee Salary and Benefits through July 6th. | 523,153 | 523,153 | |
| Accrued Payroll and Payroll Tax July 7 through July 13. | 275,000 | 275,000 | |
| Executive sale incentive motion | - | - | |
| Employee Non-executive Incentive Motion | 177,000 | 177,000 | |
| Post petition accrued vacation | 87,333 | 87,333 | |
| Mechanic Lien Payments | 100,000 | | 100,000 |
| Breakup Fee Paid to stalking horse | 100,000 | 100,000 | |
| Central Service Emp Sal and Bene's | 68,750 | 68,750 | |
| Allied HC and post petition claims | 152,812 | 152,812 | |
| Liquidated store expense | 475,000 | | 475,000 |
| Reserve for ongoing misc. operating expenses | 280,267 | 280,267 | |
| Reserve for misc. tax claims | 2,000 | 2,000 | |
| Employee Administrative Claims Reserve | 30,000 | 30,000 | |
| Gift Cards | 100,000 | 100,000 | |
| July Rent - Estate Paid | 508,861 | 508,861 | |
| July Rent - Acquistion Group Paid | 552,270 | - | 552,270 |
| Lease Cure Costs (incl. stub rent) Payments - Estate | 571,272 | 571,272 | |
| Lease Cure Costs Payments - Acquistion Group | 263,000 | - | 263,000 |
| **Total Administrative & Priority Claims** | **6,500,547** | **5,110,277** | **1,390,270** |
| | | | |
| **Consideration in Excess (Short of)** | | | |
| **A&P Claims** | - | - | - |

**Inventory balances are unaudited and could materially change prior to a transaction (allow for up to 20% standard deviation for adjustments).**

**Bachrach Clothing, Inc.**
**Wind Down Cash Flow Statement**

## Draft - For Discussion Purposes Only

| | Actual | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Closing | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending |
| | 07/13/06 | 07/26/06 | 07/23/06 | 07/30/06 | 08/06/06 | 08/13/06 | 08/20/06 | 08/27/06 | 09/03/06 | 09/10/06 | 09/17/06 | 09/24/06 | 10/01/06 | 10/08/06 | 10/15/06 |
| Beginning Cash Balance Includes escrow: (note 24) | 10,874,220 | 10,874,220 | 6,966,723 | 7,630,825 | 6,754,893 | 5,047,792 | 5,027,541 | 4,640,039 | 4,454,927 | 4,551,609 | 4,516,946 | 4,511,327 | 4,363,459 | 4,453,181 | 4,423,813 |
| **Sources of Cash:** | | | | | | | | | | | | | | | |
| Guaranteed Payment of Inventory (15%)(26) | | | | | | | | | | | | | | | |
| Estimated Cash in Stores (8) | | 856,724 | 1,688,662 | | (392,745) | | | | | | | | | | |
| Estimated Credit Card Deposit - Commerce Bank (9) | | | | | 125,050 | | | | | | | | | | |
| Estimated Credit Card Receivables estimated $551k at time of closing less 7% (25) | | | | | | | | | | | | | | | |
| Guaranteed Augmentation Payment (30) | | | | 102,300 | | | | | | | | | | | |
| Non-Guaranteed Augmentation Payment | | 150,000 | | | | | | | 102,300 | | | | 102,300 | | |
| Non-Guaranteed FF&E Payment | | - | | | | | | | | | | | | | |
| Sales Prior to Closing through July 13 | | - | | | | | | | | | | | | | |
| Sale of Ineligible Inventory | | 753,016 | | | | | | | | | | | | | |
| Sale of Intellectual Property | | - | | | | | | | | | | | | | |
| Investments held on balance sheet (11) | | - | | | | | | | | | | | | | |
| Reimbursement of Cure Payments from Lipman (12) | | | | 13,500 | 13,500 | | | | | | | | | | |
| Reimbursement for 2nd half of July Rent Payment (27) | | | 263,020 | | | | | | | | | | | | |
| Reimbursement of Mechanic Lien Payments from Lipman (13) | | | 552,279 | | | | | | | | | | | | |
| Creditors Committee Carveout repayment (1) | | | | | | 100,000 | | | | | | | | | |
| Debtors Professional Carveout and retainer repayment (2) | | | | | | | | | | | | | | | |
| Deposits received from Great American for expense reimbursement (28) | | | | | | | | | | | | | | | |
| Est. Alliance Professional Carveout and retainer refund (3) | | | 158,333 | 158,333 | 158,333 | | | | | | | | | | |
| Other Sources of Cash (10) | | - | | | | | | | | | | | | | |
| Total Sources of Cash | - | 1,989,760 | 2,662,265 | 274,133 | (93,912) | 100,000 | - | - | 102,300 | - | - | - | 102,300 | - | - |
| **Uses of Cash:** | | | | | | | | | | | | | | | |
| Sr. Revolver Line Payoff and Fees (23) | | | | | | | | | | | | | | | |
| Ch. 7 Trustee Fees/US Trustee Fees | | 4,951,383 | | | | | | | | | | | | | |
| Debtors Professional Carveout | | | | | 5,000 | | | | | 10,000 | | | | | |
| Creditors Committee Carveout | | | | | 150,000 | | | | | | | | | | |
| Lease Carveout | | | | | 125,000 | | | | | | | | | | |
| Augmentation Payment to Unsecureds (15) | | | | | - | | | | | | | | | | |
| Non-cured Stub Rent Payment (14) | | | | | - | | | | | | | | | | |
| Cure Reserve for Possible additional assigned leases (29) | | | | | 293,728 | | | | | | | | | | |
| Sun Capital Secured (placeholder)(35) | | | | | | | | | | | | | | | |
| Cure Payments (12) | | | - | - | | | | | | | | | | | |
| Alliance Asset Sale Fee (16) | | | 834,272 | | | | | - | | | | | | | |
| Mechanic Lien Payments to be reimbursed from Lipman (13) | | | | | 132,743 | | | | | | | | | | |
| Kronish Lieb (including local counsel and financial advisor) (1) | | | | | 150,000 | | | | | | | | | | |
| Shaw Gussis (2) | | | | 151,259 | 30,000 | | 56,000 | | | | | 40,000 | | | |
| Alliance Monthly Fee (3) | | | | 152,978 | | | 100,000 | | | | | 36,000 | | | |
| Sales Taxes (6.5% of sales prior to closing) (37) | | | | 157,825 | | | 100,000 | | | | | 60,000 | | | |
| Post Petition Property Taxes - Decatur - through July 1 | | 12,619 | 110,217 | 94,217 | 24,217 | 14,217 | 104,217 | | | | | | | | |
| Decatur property taxes - July 2 through July 13th | | | | | 15,684 | | | | | 5,245 | | | | | |
| Insurance (18) | | | 6,139 | | | | | | | | | | | | |
| Daily expense/Decatur Chicago (4) | | | 15,823 | 135,828 | | | | 19,829 | | | | | 5,560 | 10,000 | |
| Rent and utilities at Decatur location or new location for wind-down. | | 13,074 | 17,000 | 10,752 | | | | 92,750 | | | | | | | |
| Misc. Post Petition Accrued Expenses | | | | | | 7,500 | | | | 7,550 | | | | 7,500 | |
| Estate Employee Salary and Benefits 2 wk period up through July 6th | | - | 10,000 | 5,000 | | | | | | | | | | | |
| Accrued Payroll and Payroll Tax (July 7th - July 13th) | | 363,153 | 100,000 | | | | | | | | | | | | |
| Executive sale incentive motion paid by at closing to July Sun (netted against Sun Proceeds) | | | | 181,333 | 91,667 | | | | | | | | | | |
| Employee Non-executive Incentive Motion (19) | | | | | | | | | | | | | | | |
| Post petition accrued vacation | | | | | 137,200 | 40,000 | | | | | | | | | |
| Breakup Fee Paid to stalking horse | | | | | 87,313 | | | | | | | | | | |
| Central Service Emp Sal and Benefits | | 200,000 | | | | | | | | | | | | | |
| Allied HC and post petition claims | | | | | | 6,250 | | 6,250 | | 6,250 | | 6,250 | | 6,250 | |
| Store operating expense at liquidated stores (28) | | 22,812 | 21,667 | 21,667 | 21,667 | 21,667 | 21,667 | 21,667 | | | | | | | |
| Reserve for ongoing misc. operating expenses | | | 158,333 | 158,333 | 158,333 | | | | | | | | | | |
| Reserve for misc. tax claims (21) | | 37,929 | 133,120 | 5,618 | 5,618 | 5,618 | 5,618 | 5,618 | 5,618 | 5,618 | 5,618 | 5,618 | 5,618 | 5,618 | 5,618 |
| Employee Administrative Claims Reserve | | | | | | | | | | | | | | | |
| Gift Cards (22) | | | | | | | | | | | | | | | |
| July Rent (5) | | | 25,000 | 25,000 | 25,000 | 25,000 | | | | | | | | | |
| | | 391,287 | 521,548 | 38,256 | | | | 310,000 | | | | | | | |
| Total Uses of Cash | - | 5,897,257 | 1,998,163 | 1,159,065 | 1,613,189 | 120,251 | 387,502 | 185,112 | 5,618 | 34,663 | 5,618 | 147,868 | 12,579 | 29,368 | 5,618 |
| Ending Cash Balance | 10,874,220 | 6,966,723 | 7,630,825 | 6,754,893 | 5,047,792 | 5,027,541 | 4,640,039 | 4,454,927 | 4,551,609 | 4,516,946 | 4,511,327 | 4,363,459 | 4,453,181 | 4,423,813 | 4,418,194 |

| Projected | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | |
| 10/22/06 | 10/29/06 | 11/05/06 | 11/12/06 | 11/19/06 | 11/26/06 | 12/03/06 | 12/10/06 | 12/17/06 | 12/24/06 | 12/31/06 | 01/07/07 | 01/14/07 | 01/21/07 | 01/28/07 | Totals |
| 4,418,194 | 4,342,326 | 4,216,708 | 4,322,140 | 4,309,022 | 4,297,154 | 4,211,535 | 4,315,967 | 4,296,349 | 4,284,481 | 4,222,863 | 4,283,994 | 4,276,494 | 4,276,494 | 4,464,492 | 12,874,220 |
| | | | | | | | | | | | | | | | 2,134,641 |
| | | | | | | | | | | | | | | | 125,500 |
| | | | | | | | | | | | | | | | - |
| | | 102,350 | | | | 102,350 | | | | | | | | | 511,550 |
| | | | | | | | | | | | | | | | 360,000 |
| | | | | | | | | | | | | | | | - |
| | | | | | | | | | | | | | | | - |
| | | | | | | | | | | | | | | | 731,536 |
| | | | | | | | | | | | | | | | - |
| | | | | | | | | | | | | | | | - |
| | | | | | | | | | | | | | | | 37,000 |
| | | | | | | | | | | | | | | | 253,000 |
| | | | | | | | | | | | | | | | 552,270 |
| | | | | | | | | | | | | | | | 160,000 |
| | | | | | | | | | | | | | 39,721 | | 35,721 |
| | | | | | | | | | | | | | 74,193 | | 74,193 |
| | | | | | | | | | | | | | | | 475,050 |
| | | | | | | | | | | | | | 104,583 | | 104,583 |
| | | | | | | | | | 105,500 | | | | | | 165,000 |
| - | - | 102,300 | - | - | - | 102,300 | - | - | - | 105,000 | - | - | 218,497 | - | 5,664,944 |
| | | | | | | | | | | | | | | | 4,561,383 |
| | | | | | | | 7,500 | | | | | | 2,500 | | 25,002 |
| | | | | | | | | | | | | | | | 150,000 |
| | | | | | | | | | | | | | | | 125,500 |
| | | | | | | | | | | | | | | | - |
| | | | | | | | | | | | | | | | - |
| | | | | | | | | | | | | | | | 295,726 |
| | 150,000 | | | | | | | | | | | | | | 150,000 |
| | | | | | | | | | | | | | | | - |
| | | | | | | | | | | | | | | | 834,272 |
| | | | | | | | | | | | | | | | 232,742 |
| | | | | | | | | | | | | | | | 300,050 |
| 24,300 | | | | | 24,000 | | | | 24,000 | | | | | | 349,259 |
| 20,000 | | | | | 20,000 | | | | 25,500 | | | | 20,000 | | 358,979 |
| 30,050 | | | | | 26,000 | | | | 12,600 | | | | 8,000 | | 371,856 |
| | | | | | | | | | | | | | | | 353,702 |
| | | | | | | | | | | | | | | | 31,179 |
| | | | | | | | | | | | | | | | 6,139 |
| | | 5,000 | | | | 5,000 | | | | | | | | | 64,641 |
| | | | | | | | | | | | | | | | 56,574 |
| | | | 7,500 | | | | 7,500 | | | | 7,500 | | | | 45,500 |
| | | | | | | | | | | | | | | | 15,000 |
| | | | | | | | | | | | | | | | 533,153 |
| | | | | | | | | | | | | | | | 275,000 |
| | | | | | | | | | | | | | | | - |
| | | | | | | | | | | | | | | | 177,500 |
| | | | | | | | | | | | | | | | 87,315 |
| | | | | | | | | | | | | | | | 100,000 |
| 6,250 | | 6,250 | | 6,250 | | 6,250 | | 6,250 | | 6,250 | | | | | 58,750 |
| | | | | | | | | | | | | | | | 152,812 |
| | | | | | | | | | | | | | | | 475,500 |
| 5,618 | 5,618 | 5,618 | 5,618 | 5,618 | 5,618 | 5,618 | 5,618 | 5,618 | 5,628 | 5,628 | | | | | 280,257 |
| | | | | | | | | | | 2,000 | | | | | 2,000 |
| | | | | | | | | | | 30,000 | | | | | 30,000 |
| | | | | | | | | | | | | | | | 150,000 |
| | | | | | | | | | | | | | | | 1,062,131 |
| 75,868 | 105,618 | 16,868 | 12,118 | 11,868 | 65,618 | 16,868 | 20,618 | 11,868 | 61,618 | 43,868 | 7,500 | - | 30,500 | - | 12,074,671 |
| 4,342,326 | 4,236,708 | 4,321,140 | 4,309,022 | 4,297,154 | 4,231,535 | 4,316,967 | 4,296,349 | 4,284,481 | 4,222,863 | 4,283,994 | 4,276,494 | 4,276,494 | 4,464,492 | 4,464,492 | 4,464,492 |

**Bachrach - Wind-Down Cash Flow Footnotes**

(1) Kronish Lieb and local counsel estimated expenses = June $216k, July $70k, Aug $50k, Sept $30k, Oct $30k, Nov $30k. Model assumes 20% charged against retainer. Total fees towards retainer = $85k, therefore refund given back to estate end of period.
(2) Shaw Gussis estimated fees = June $184k, July $125k, Aug $45k, Sept $25k, Oct $25k, Nov $25k, Dec $25k less $90k retainer and carve out. Model assumes 20% charged against retainer. Total fees towards retainer = $91k, therefore refund given back to estate end c
(3) Alliance estimated fees = June $196, July $125k, Aug $75, Sept $25k, Oct $20k, Nov $15, Dec $10 Less $120k retainer. Model assumes 20% charged against retainer. Total fees towards retainer = $92k, therefore refund given back to estate end of period.
(4)Utility expense for week ending July23 are payments that have yet to clear from initial $81k deposit.
(5) July rent - portion paid week of 7/16, portion paid week of 8/27 for point of sales expenses and utilities in stores for 14 days. Includes payment for 2nd half of July that will clear week of 7/23. Portion also clears on 7/30/06.
(8) Amount in bank in stores as of mid June was $156k.
(9) There is a credit card deposit of approximately $862k on hand as of 7/13/06 at Commerce Bank to protect against chargebacks. Recovery comparison assumes no refund at this time. Potential recovery is $800k which is the amount of the reserve as of 7/7/06.
(10) Augmentation Estimate assumes 50/50 split on first $400k and 70/30 split thereafter with higher amount going to creditor. Amount not paid from estate but by Sun Capital.
(11) Approximately $27k of marketable securities held on Balance Sheet. Assume liquidation of assets over 2 week period.
(12) Assumes cure to on all leases that have been assigned and assumed to Lipman of which $263 will be covered by acquisition group. Amount includes stub rent.
(13) Assumes mechanic liens are $100k which are all reimbursed by acquisition group up to $100k.
(14) Amount represents non-cured stub rent.
(15) No timing assumptions made to the payment of Sun Capital. For modeling purposes Sun receives ending cash balance.
(16) Based on Alliance Contract.
(17) Assumes Sales taxes of 6.5% owed for sales during June. Assumes June sales to be $5 million and 1st 2 weeks of July to be $1.420 million. Sales taxes are highest 3rd week of month.
(18) Insurance includes $150k D&O insuance payment. General liability and other insurance estimated at $36k per month. Estimated $20k as a placeholder for insurance post 10/1.
(19) Includes taxes of $40k and reduced by $23k due to payment prior to week ending 7/16/06.
(21) Company has received one tax claim from Fairfield County, VA.
(22) Assumes Gift Cards are responsibility of acquisition group post 8/13/06.
(23) includes fees on reserve of $105,000 at LaSalle that could potentially be returned.
(24) Includes cash in LC of $8,312,095 through closing. Estate then required to hold $1,688,622 in LC through 8/6 until inventory is reconciled.
(25) Based on Agreement with Bachrach LLC, 7% of collectables remains with Bachrach LLC.
(26) True up on inventory counting assumes inventory at $9.0 million cost vs. $9.5 in prior revisons.
(27) For ease of transition, 2nd half of July paid by estate and reimbursed by acquisition group. This is for 18 of the 31 days.
(28) Per agreement with Great American, reimbursement for the store employee expense at liquidation stores is paid for the first 21 days. Currently have an LC for $475.
(29) Reserve for additional leases that may be assigned and assumed by Lipman.

**Bachrach - Summary of Cash Available to pay Sun Capital**

| | | |
|---|---|---|
| Cash Balance as of 7/16/06 (per weekly cash flow) | 6,966,723 | |
| Less: Checks outstanding: | (125,000) | |
| Net Cash Balance | | 6,841,723 |
| | | |
| Additional sources of cash received since 7/16/06: | | |
| Reimbursement of Cure Payments from Lipman | 263,000 | |
| Reimbursement for 2nd half of July Rent Payment | 552,270 | |
| Total Cash received since 7/16/06 | | 815,270 |
| | | |
| Total Cash Available | | 7,656,993 |
| | | |
| Uses of cash through the remainder of case per weekly CF Stmt. | 6,177,415 | |
| Less checks outstanding as part of contingency | (125,000) | |
| Less Expenses covered by joint-venture: | | |
| Mechanics Liens | (100,000) | |
| Store operating expense at liquidated stores | (475,000) | |
| Net uses of cash owed through the remainder of case per weekly CF | | 5,477,415 |
| | | |
| Proposed Cash Payment Available to Sun Capital as of 7/25/06 | | 2,179,577 |
| | | |
| **Anticipated timing of payments to Sun Capital:** | | |
| Payment on 7/26/06 | | 2,179,577 |
| Anticipated Payment on 8/11/06 (15% purchase price payment net of adjustments) | | 1,297,917 |
| Payments upon liquidation of miscellaneous sources of cash (Accounts Receivables, investments, reserves, etc.) | | 986,997 |
| **Estimated Distribution to Sun Capital per recovery analysis** | | **4,464,492** |