# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BACHRACH CLOTHING, INC., | ) | Case No. 06 B 6525 |
| | ) | |
| Debtor. | ) | Judge Pamela S. Hollis |

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on the motion of Bachrach Acquisition LLC ("BAC") to compel Bachrach Clothing, Inc. ("Debtor") to pay certain real estate taxes. For the reasons stated below, the court grants the motion.

## BACKGROUND

On February 15, 2005, Debtor entered into a lease with Barsaled, LLC, for the non-residential property at One Bachrach Court in Decatur, Illinois ("Lease"). According to Article 4 of the Lease, Debtor is responsible for payment of real estate taxes.

Debtor filed for relief under Chapter 11 of the Bankruptcy Code on June 6, 2006. On July 10, 2006, pursuant to an Agency Agreement and Addendum this court authorized Debtor to sell its operating assets to a group that included Bachrach Acquisition LLC ("BAC"). This transaction closed on or about July 13, 2006.

Pursuant to the terms of the Addendum, BAC had the right to designate leases for which the Debtor would then seek court approval to assume and assign to BAC. According to paragraph 6 of the Addendum, BAC "shall only be responsible for cure costs of up to . . . $250,000 with respect to all other cures [other than mechanics liens] required as a condition to the assumption and assignment of . . . any such lease where

BAC is the designated assignee" (the "Cure Cap"). BAC states that it has reached the Cure Cap.

Debtor sought this court's approval to assume and assign the Lease to BAC in November 2006. On February 15, 2007, the court entered an agreed order providing for assumption and assignment of the Lease to BAC.

The agreed order required the Debtor to pay $147,364 to cure existing defaults under the Lease. That amount was comprised of overdue 2005 real estate taxes in the amount of $133,197.97, and June 2006 base rent of $14,166.67, plus additional interest and penalties relating to the 2005 real estate taxes. Debtor timely paid the arrearage to the Landlord and to the appropriate tax authorities.

Pursuant to paragraph 5 of the agreed order, BAC reserved its rights to seek an order determining whether Debtor or BAC was responsible for payment of the portion of the 2006 real estate taxes that are attributable to the time period prior to the closing on the Agency Agreement and Addendum, when Debtor was in possession of the property (the "2006 Taxes").

In order to resolve that issue, BAC brought the instant motion seeking an order compelling Debtor to pay the 2006 Taxes. The last status hearing on this matter was June 21, 2007, and the 2006 Taxes had not yet come due. The amount at issue is $61,123.29.

## LEGAL DISCUSSION

11 USC § 365(b)(1) provides that "[i]f there has been a default" in a lease, the debtor-in-possession cannot assume the lease unless, at the time of assumption, it cures the default or provides adequate assurance that the default will be cured.

In this case, the 2006 Taxes had not yet come due at the time Debtor sought to assume the Lease. This is so because the taxing authority bills taxes in arrears. Since a bill had not yet been sent for the 2006 Taxes, the Debtor argues that there was no default with respect to the 2006 Taxes and that payment of those taxes is BAC's responsibility as the current tenant.

While there is no authority on point, the Seventh Circuit tells us in the context of 365(d)(3)[1] that it is "neither inevitable nor sensible" to find that simply because a billing date has not yet arrived that a tenant is not contractually obligated to reimburse its landlord.

> It is true that Handy Andy's obligation to National to pay (or reimburse National for paying) the real estate taxes did not crystallize until the rental due date after the taxes were paid. But since death and taxes are inevitable and Handy Andy's obligation under the lease to pay the taxes was clear, that obligation could realistically be said to have arisen piecemeal every day of 1994 and to have become fixed irrevocably when, the last day of the year having come and gone, the lease was still in force.

In re Handy Andy Home Improvement Centers, 144 F. 3rd 1125, 1127 (7th Cir. 1998).

In Handy Andy we learn that prepetition taxes are a prepetition obligation, and postpetition taxes are a postpetition obligation, regardless of when the billing date occurs. Our Circuit emphatically rejected the billing date approach in determining whether a debtor has an obligation to the landlord.

---

[1] 11 U.S.C. § 365(d)(3) states:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

While not exactly on point, Handy Andy tells us the reasoning favored by the Seventh Circuit. We must reject the form of the date of billing and look at the substance of the entire transaction.

In this case, Debtor was in possession of the premises from January 1 to on or about July 13, 2006. While the taxes for that period did not come due during the time of possession, Debtor's obligation to pay those taxes was clear under the Lease. The taxes from January 1 through June 6 are a prepetition obligation, the taxes from June 6 to July 13 are a postpetition obligation, and both components of the 2006 Taxes must be paid before the Lease can be assumed.

Since the 2006 Taxes must be paid before the Lease can be assumed, they are a cure cost that must be paid by the Debtor unless there was a contractual agreement providing otherwise. BAC did not agree to make the payment, so the Debtor must do so.

Debtor argued that there was no "present" default at the time of assumption, and that it should not be required to cure a default that is not yet in existence. See In re R.H. Macy & Co., Inc., 236 B.R. 583, 591:

> By its terms, section 365(b)(1) requires that the trustee cure present defaults, not defaults that are not yet in existence. As it would be atypical for a trustee to include future obligations in the cure amount, if a trustee wanted to include contingent, unmatured debts in a cure prior to assumption, it would be incumbent on the trustee to state with some degree of clarity that these debts were to be included.

The Debtor cites several additional cases in support of this point. See also In re Aerovias Nacionales de Colombia, S.A. Avianca, 323 B.R. 879 (Bankr. S.D.N.Y. 2005); In re Conseco, Inc., 330 B.R. 673 (Bankr. N.D. Ill. 2005); In re Resource Technology Corp., 254 B.R. 215 (Bankr. N.D. Ill. 2000); In re Washington Capital Aviation & Leasing, 156 B.R. 167 (Bankr. E.D. Va. 1993).

However, none of these cases compel a different result. R.H. Macy concerns whether a debtor was required to pay a tax obligation because of the discharge order in a confirmed plan. The R.H. Macy court determined that because certain taxes were not due until after an assumption notice went out, those unpaid taxes were not a present default that should have been cured at the time of assumption. Instead, the taxes were a future obligation for which the Debtor was now liable.

The assumption notice provided that the cure amount paid at assumption did not include "future obligations under the contracts, which will be performed by the Debtors as and when such future obligations become due." Id. at 590 (Emphasis added.) In that case, therefore, defaults that would be cured at the time of assumption specifically excluded obligations that had not yet come due. We have no such language in the instant case. Instead, we have the Seventh Circuit's guidance that the obligation to pay taxes arises when the taxes accrue, not on the due date.

In Aerovias Nacionales, the landlord sought "rejection damages" following the assumption of leases that the parties had agreed to modify. The modifications included reduced rent, and the landlord filed a claim for the difference between the original and the modified rent. In sustaining the debtor's objection to this claim, the court first cited R.H. Macy for the proposition that cure payments are made only "of present defaults, not defaults not yet in existence." 323 B.R. at 889

But the court then proceeded to ignore that citation, stating that the landlord had already "compromised its right to a 'cure payment'" in the memorandum of understanding executed by the parties as part of the modification and assumption process. Id. "Pegasus gave up its bankruptcy claim to cure payments for future amounts that

*would have been due* under the original leases if those leases had been assumed in their original form." Id. (emphasis in original). In other words, the landlord did have a right to a cure payment for future amounts that would have been due under the assumed lease – but it had already compromised that right and was entitled to nothing further. There has been no such compromise in this case.

The Conseco court considered whether the discharge injunction in a confirmed plan applied to plaintiffs who filed claims "based primarily on the increase in the cost of insurance charge that took effect after confirmation . . .". Conseco, 330 B.R. at 685. In determining whether those claims were barred, the court noted that they were based on insurance contracts, which are generally considered executory contracts. Although for technical reasons the insurance contracts were not actually assumed, the court treated the contracts as assumed for purposes of the opinion, and stated:

> In order to assume an executory contract, the debtor must cure or provide adequate assurance that it will promptly cure any pre-assumption default under the contract. 11 U.S.C. § 365(b)(1). Claims arising from failure to cure past defaults are not discharged. After assumption, the debtor must comply with all the terms of the contract going forward. The discharge of the debtor does not bar a claim for post-discharge breach of an executory contract. *R.H. Macy & Co. v. Wongco (In re R.H. Macy & Co.)*, 236 B.R. 583, 590-91 (Bankr.S.D.N.Y.1999), *aff'd*, 283 B.R. 140 (S.D.N.Y.2002).

Id. at 687. Consequently, the plaintiffs' claims were not barred by the discharge injunction.

This quotation from Conseco, however, brings us no closer to resolving the question of whether the 2006 Taxes actually were a pre-assumption default. Instead, Conseco reminds us that a debtor must cure pre-assumption defaults, a proposition with which this court has no quarrel. It is Handy Andy that instructs us that taxes which accrue while the debtor is in possession of leased premises are the debtor's obligation.

Those unpaid taxes, even though the billing date has not yet arrived, are a pre-assumption default, and must be cured at the time of assumption.

The parties in Resource Technology asked the court to decide whether a particular contract was executory. In determining that it was, the court engaged in a lengthy discussion of the nature and special treatment of executory contracts in bankruptcy. 254 B.R. at 220-223. In the midst of this discussion, the court mentioned that assumption of an executory contract carries two burdens, one of which is that "pursuant to § 365(b), the trustee or debtor in possession may only assume the contract after demonstrating that the estate is able to meet the debtor's obligations -- by promptly curing any existing defaults and giving adequate assurance of future performance." Id. at 221. There is no further analysis of the meaning of an "existing" default.

Finally, in Washington Capital, the debtor sought to assume a contract and pay a small amount to cure past defaults. The court denied the motion, noting that the language of § 365(b)(1) measures defaults as of the time of assumption. Therefore, the debtor was required to cure both pre and post petition defaults and the proposed cure payment was insufficient.

As with Conseco, Washington Capital does not answer the question of whether unpaid taxes that accrued while the debtor was in possession of leased premises are a default that must be cured prior to assumption. Instead, it simply restates the proposition that defaults existing at the time of assumption must be cured. Handy Andy takes us the extra step, leading us to the conclusion that the accrued taxes are such an existing default.

In its response to the motion to compel, Debtor stated that "[s]ince the obligation to pay the taxes did not arise under the Lease at the time of assumption, Debtor was not in default of this obligation . . . ." (Emphasis added.)

In making this argument, Debtor continues to put form above substance in contravention of the Seventh Circuit's guidance. The Circuit stated in Handy Andy that the obligation to pay real estate taxes "could realistically be said to have arisen piecemeal every day" that the Debtor was in possession of the premises and bound by the terms of the Lease. Id. at 1127. True, the billing date had not yet arrived at the time the Agreed Order was entered. But the obligation had in fact arisen under the Lease.

## CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED THAT** the motion to compel is granted.

ENTERED:

Date:  AUG - 2 2007

PAMELA S. HOLLIS
United States Bankruptcy Judge